UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

RAINBOW DENTAL, LLC, and
SHAUN HWANG,

    Plaintiffs,

v.                                No. 1:15-cv-01002-GBW-LF

DENTAQUEST OF NEW MEXICO, LLC,
A foreign Limited Liability Company,
And the NEW MEXICO HUMAN SERVICES DEPARTMENT

    Defendants.

and

---

DENTAQUEST OF NEW MEXICO, LLC,

    Counterclaimant,

v.

RAINBOW DENTAL, LLC, and
SHAUN HWANG,

    Counterdefendants.

### COUNTERCLAIMANT'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS DENTAQUEST'S COUNTERCLAIM FOR FRAUDULENT MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION

      Counterclaimant DentaQuest of New Mexico, LLC ("DentaQuest"), by and through its attorneys, Conklin, Woodcock & Ziegler, P.C., submits the Response in opposition to the Motion to Dismiss DentaQuest's Counterclaim for Fraudulent Misrepresentation and Negligent Misrepresentation (Doc. 11). The Counterdefendants' "in a nutshell" assessment of the relief sought by DentaQuest is based upon a misconception and oversimplification of DentaQuest's

1

obligations under state and federal law to investigate, report, and undertake recovery efforts of Medicaid overpayments. The claims against Counterdefendants were made in furtherance of DentaQuest's obligations to recover overpayments in the context of a Medicaid Managed Care program. As such, the Motion is properly denied as a plausible claim for fraudulent misrepresentation and negligent misrepresentation was pled.

I.     **Introduction**

DentaQuest's Counterclaim is based upon allegations that Plaintiff Hwang, who was not a credentialed or approved provider, and Rainbow Dental, which is the office location or place of business where Dr. Hwang practices, falsely and fraudulently submitted numerous claims for payment for dental services that Plaintiffs represented had been performed by other dentists who were not on-site and who did not perform the services as represented by Plaintiffs. Specifically, the Counterclaim alleges that Plaintiff Hwang, who had been terminated as an approved provider in 2010, performed dental services which he could not bill or be paid for. In order to be paid, Plaintiffs falsely and fraudulently represented that the services were performed by other providers. Two of these providers did not work on the dates the services were provided. A third provider was deceased when the services were provided. DentaQuest paid these false claims before it discovered the fraud committed by Plaintiffs.

DentaQuest is contractually obligated to the managed care organizations to report and refund all overpayments of claims to the MCOs. DentaQuest's Counterclaim seeks to recover from Plaintiffs the overpayments that must be refunded, as well as additional recoverable damages. Those overpayments resulted directly from the fraudulent or negligent misrepresentations by Plaintiffs.

> II. **The allegations of the Counterclaim demonstrate that DentaQuest's claims are based upon its contracts with MCOs in its administration of dental services and benefits to Medicaid patients, which includes recovery efforts.**

In its Counterclaim DentaQuest alleges that "[p]ursuant to *contracts with managed care organizations*, DentaQuest administers and delivers dental services to eligible members or enrollees of prepaid healthcare plans contracting with the State of New Mexico's Medicaid program. *See* Counterclaim (Doc. 6), ¶ 5 (emphasis added). Further, "DentaQuest credentials individual dentists to be individual participating providers of the dental services in a network of approved providers." *Id.*, ¶ 6. As a result, it is necessary to view this case from federal and state law defining the Medicaid managed care organization system. *See* 42 U.S.C. § 1396u-2 (Provisions relating to managed care), NMAC §§ 8.301.5, 8.308 (Managed Care Program), and NMAC § 8.308.2.17 (Delegation).

Under the managed care program, Medicaid beneficiaries are shifted away from a direct, state-paid fee-for-service system to a privately run managed care program. In the latter system, the managed care organization ("MCO") receives "a fixed per-member-per-month capitated payment rate." NMAC § 8.308.9.9. In exchange the MCO covers certain "physical health, behavioral health and long-term care services," which includes dental services. NMAC §§ 8.308.9.9 and 8.308.9.12(F). In this framework, DentaQuest performs certain functions on behalf of or acting as the MCO as reflected in paragraph 5 of its Counterclaim by virtue of an authorized delegation. *See* NMAC § 8.308.2.17 ("Delegation is the process whereby a MCO gives another entity the authority to perform certain functions on its behalf.").

In paying for Medicaid services, the MCO:

> shall determine its own utilization management (UM) protocols, which are based on reasonable medical evidence and are not bound by those found in NMAC rules, billing instructions or utilization review instructions. MAD [Medical Assistance Division] may

> review and approve the MCO's UM protocols. Unless otherwise directed by MAD, a HSD contracted MCO is not required to follow MAD's reimbursement methodologies or MAD's fee schedules....

NMAC § 8.308.9.10. As such, the MCO sets its own fee schedule and utilization protocols for reimbursement to qualified providers for covered services provided to its members. *Id.*

Regardless of the amounts paid to providers by the MCO for covered services, HSD pays "a capitated amount to the MCO…at specified rates." NMAC § 8.308.20.9(B). The MCO is obligated to "accept the capitation rate paid…as payment in full for all services, including all administrative costs associated therewith, including gross receipts tax payable to the provider." *Id.* HSD and the MCO acknowledge that the "MCO is at risk of incurring losses if the cost of providing the managed care Medicaid benefit package exceeds its capitation payment." *Id.* The MCO is not entitled to "retroactive payment adjustments to the MCO to reflect the actual cost of services furnished by the MCO." *Id.*

Accordingly, the amounts paid by the state to the MCO would not match the amounts paid by the MCO for Medicaid Services. For this reason, the NMAC outlines processes to follow in the event the MCO and/or the state discovers overpayments[1] or false claims and how any recovered overpayments are to be distributed. *See* NMAC 8.308.22. For instance, the NMAC mandates that the MCO "have a comprehensive internal integrity and overpayment prevention program to prevent, detect, preliminarily investigate, and report potential and actual program violations." NMAC § 8.308.22.9(A). The MCO is mandated to "perform preliminary investigations of alleged

---

[1] Overpayments "[a]re funds that a person or entity received or retains in excess of the Medicaid allowable amount," and can include services "provided by an unlicensed or excluded individual…" NMAC § 8.308.22.9(C) and (C)(1)(c).

fraud," and "submit for review all facts, supporting documentation and evidence of alleged fraud." NMAC § 8.308.22.9(B). In relation to overpayments:

> (4) The MCO shall notify its providers of the provision that overpayments identified by a provider but not self-reported by a provider within the 60-day timeframe are presumed to be false claims and are subject to referrals as credible allegations of fraud;
>
> (5) The MCO shall report claims identified for overpayment recovery; [and]
> \*   \*   \*
> (6) *Provide all records pertaining to overpayment recovery efforts as requested by HSD.*

NMAC § 8.308.22.9(C) (emphasis added).

Refunds for overpayments do not automatically belong to the State, as suggested by Counterdefendants. *See e.g.*, 8.308.22.9(D). In certain circumstances, the refund would belong exclusively to the MCO, s*ee* 8.308.22.9(D)(1), or "[u]nless otherwise agreed to by the MCO and HSD," to the State, *see* 8.308.22.(D)(3). DentaQuest has made allegations and asserted claims that, if proven, establish that it has the right as well as the contractual obligation to pursue the overpayments. Moreover, "[i]n situations where the MCO and a governmental entity, or its designee, jointly audit its providers, the MCO and the governmental entity or designee shall agree upon a distribution of any refund." 8.308.22.9(D)(2); and *see e.g.* relevant portions of the Ancillary Services Agreement with Presbyterian Network, Inc., attached hereto as Exhibit A (contractually obligating DentaQuest to *report and refund* all overpayments of claims to the MCO).[2]

---

[2] Pursuant to Rule 15(a), DentaQuest was prepared to file an Amended Counterclaim adding allegations regarding its contractual requirement to report and refund all overpayments to the MCOs as well as add allegations about another provider who was the subject of overpayments.

5

Under its contractual delegation with the MCOs and under state and federal law, DentaQuest is obligated to investigate, report, and undertake efforts to collect overpayments. The claims of DentaQuest were alleged to further its obligations and it clearly has standing[3] to bring its claims. Notably, Counterdefendants do not seek a dismissal based upon the facts alleged by DentaQuest to state plausible claims of fraudulent misrepresentation and negligent misrepresentation. Rather, Counterdefendants ignore the requirements and standards of the Medicaid managed care program adopted in New Mexico to argue that DentaQuest is precluded from bringing its claims. This argument is misplaced and not supported by state or federal law.

Pursuant to Rule 12 and Rule 9, DentaQuest alleged plausible claims of fraudulent misrepresentation and negligent misrepresentation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Motion to Dismiss is properly denied.

### III. The Medicaid False Claims Act does not abrogate DentaQuest's contractual delegation to collect overpayments.

---

The Motion to Dismiss was filed before the Amended Counterclaim was filed. The Amended Counterclaim, including these allegations, has now been filed.

[3] The Counterdefendants' reliance on cases discussing the Medicare Act and describing DentaQuest as a Medicare fiscal intermediary to support a lack of standing argument are misplaced. Just as the rules governing a privately run managed care program are qualitatively different than the rules of the direct, state-paid fee-for-service system in New Mexico's Medicaid program, the rules governing the Medicare system are not easily borrowed.

The Counterdefendants argue that the Medicaid False Claims Act has abrogated any common law rights of recovery to collect overpayments by DentaQuest on the basis that "any procedural right is fully covered by the Constitution, statutes, or rules." *See* Motion to Dismiss (Doc. 11), p. 3. However, in presenting this argument, the Counterdefendants ignore the fact that DentaQuest is operating within New Mexico's Medicaid managed care program, which has been partially privatized. *See* Section I, *supra*. Additionally, the Counterdefendants ignore DentaQuest's ability to undertake recovery efforts pursuant to the New Mexico Administrative Code. *See* NMAC § 8.308.22.9(C)(6) (DentaQuest, upon request by HSD, must "[p]rovide all records pertaining to overpayment recovery efforts….").

Finally, the Medicaid False Claims Act itself defeats the Counterdefendants' abrogation argument. Section 27-14-14 states:

> [t]he application of a civil remedy pursuant to this law *does not preclude the application of other laws, statutes or regulatory remedy*, except that a person may not be liable for a civil remedy pursuant to the Medicaid False Claims Act and civil damages or recovery pursuant to the Medicaid Fraud Act if the civil remedy and the civil damages or recoveries are assessed for the same conduct by another government agency.

NMSA 1978, § 27-14-14 (emphasis added). Here, DentaQuest does not seek a civil remedy under the Medicaid False Claims Act or the Medicaid Fraud Act. It seeks other civil remedies. Additionally, Medicaid False Claims Act only applies to "the amount of damages that *the state sustains*" caused by the submission of a false claim. NMSA 1978, § 27-14-4 (emphasis added). In the context of the managed care program, the State did not sustain any direct damages as it did not make any type of payment for the services that are alleged to constitute overpayments. *See* Counterclaim (Doc. 6), ¶¶ 18, 19, 20, and 21; and NMAC § 8.308.9.9 (under the managed care program, the State pays a "fixed per-member-per-month capitated payment rate."). Rather,

DentaQuest, as a delegee of the MCOs, sustained direct damages for paying claims it alleges to be false and to constitute overpayments.

Clearly, the Medicaid False Claims Act was designed to co-exist with other laws, including actions based upon the common law.  In *Gandy v. Wal-Mart Stores, Inc.*, the New Mexico Supreme Court discussed the interplay of the New Mexico Human Rights Act and a claim of common law retaliatory discharge.  The court noted that "[b]ecause the language of the Act is permissive and contains no declaration that the remedies it provides are exclusive, and because the remedies provided in the Act are not the same as the remedies available in a tort action for retaliatory discharge, we hold that the legislature did not intend the Act's remedies to be exclusive." *Gandy*, 1994-NMSC-040, ¶ 8, 117 N.M. at 443-44, 872 P.2d at 861-62.

It is counter-intuitive to suggest that the State has the exclusive remedy to recover overpayments in this context.  DentaQuest is operating within the managed care program with the approval of the State.  DentaQuest, not the State, paid the Counterdefendants for dental services as alleged in paragraphs 18, 19, 20, and 21 of the Counterclaim.  Under the reasoning of the Counterdefendants, the State would receive a windfall, recovering the overpayments from the Counterdefendants that were ultimately paid by DentaQuest, and DentaQuest would be precluded from sharing in the State's recovery.  Yet, DentaQuest's contractual obligations to repay the amount of overpayments to the MCOs would remain.  Counterdefendants' interpretation of the Medicaid False Claims Act would impose a severe hardship and cause damage to DentaQuest.  Moreover, it would likely cripple the Medicaid managed care program in New Mexico as there would be a substantial financial risk for the MCO or its delegee to perform such services.

The Motion to Dismiss is properly denied as the common law was not abrogated by the Medicaid False Claims Act.  The Medicaid False Claims Act and the common law co-exist to

ensure instances of overpayments or false and fraudulent claims can be collected against the alleged wrongdoer.

WHEREFORE, DentaQuest respectfully requests this Court to deny the Motion to Dismiss for the reasons discussed herein, and for such other and further relief as the Court deems just and proper.

                        Respectfully submitted,

                        CONKLIN, WOODCOCK & ZIEGLER, P.C.

                        By:   */s/ Alisa Wigley-DeLara*
                              Robert C. Conklin
                              Alisa Wigley-DeLara
                              320 Gold Ave., Suite 800
                              Albuquerque NM 87102
                              Tel. (505) 224-9160
                              Fax (505) 224-9161
                              rcc@conklinfirm.com
                              awd@conklinfirm.com
                              *Attorneys for DentaQuest of New Mexico, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was e-filed and served electronically through the CM/ECF system upon counsel of record on this 25th day of February 2016:

Michael J. Cadigan
Kristina Caffrey1
CADIGAN LAW FIRM, P.C.
3840 Masthead NE
Albuquerque, NM  87109
Tel (505) 830-2073
Fax (505) 830-2385
cadigan@cadiganlaw.com
kristina@cadiganlaw.com
*Attorneys for Plaintiffs/Counterdefendants*


*/s/ Alisa Wigley-DeLara*
Alisa Wigley-DeLara