IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAINBOW DENTAL, LLC, and
SHAUN HWANG,

    Plaintiffs,

v.                    No. 15-cv-1002 MCA/LF

DENTAQUEST OF NEW MEXICO,
LLC, a foreign Limited Liability
Company, and the NEW MEXICO
HUMAN SERVICES DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Defendant New Mexico Human Services Department's Motion to Dismiss Complaint*. [Doc. 22] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court **DEFERS** ruling on the *Motion* pending the opportunity for Plaintiffs to file a Motion to Amend the Complaint, if they have they have the factual support to do so.

## BACKGROUND

Rainbow Dental, LLC, and Shaun Hwang filed suit in this Court against DentaQuest of New Mexico, LLC and the New Mexico Human Services Department (HSD). [Doc. 1] HSD contracts with various managed care organizations (MCOs) to provide Medicaid healthcare services to eligible New Mexicans. [Doc. 1, ¶¶ 13-14] Three of those MCOs sub-contract with DentaQuest to administer their Medicaid dental services. [Doc. 1, ¶¶ 15-16]

1

Plaintiffs allege that, on August 24, 2015, DentaQuest notified Rainbow Dental that it was terminating Rainbow Dental from its Medicaid provider network as of the next day.  [Doc. 1, ¶ 20]  Rainbow Dental alleged that it served approximately 30 to 50 Medicaid patients per day, many of whom are children, and Plaintiffs allege that their termination[1] "left hundreds of patients without dental care."  [Doc. 1, ¶¶ 42-44]  Plaintiffs allege that their termination from the Medicaid provider network caused their economic injury and financial damage.  [Doc. 1, ¶ 45]  Finally, Plaintiffs alleged that they still have approximately ten claims pending through DentaQuest.  [Doc. 1, ¶ 47]

DentaQuest informed Rainbow Dental that its grounds for terminating Rainbow Dental as a provider were:  "Non-compliance and failure to cooperate with and abide [by] DentaQuest's Credentialing requirements resulting in the submission of false claims and fraudulent billing."  [Doc. 1-3, p. 1]  Rainbow Dental requested an appeal and further information on the basis for the action by DentaQuest.  [Doc. 1, ¶¶ 28-31]  DentaQuest originally set the hearing requested by Plaintiffs for October 22, 2015, but then postponed the hearing and had not set a date for the hearing as of November 4, 2015, the date Plaintiffs filed their Complaint.  [Doc. 1, ¶¶ 32-37]  Nor had DentaQuest provided Plaintiffs with the information they requested concerning the basis for Rainbow Dental's termination.  [Doc. 1, ¶¶ 32-37]

Plaintiffs allege that DentaQuest's actions are in violation of various state statutes, state regulations, and federal regulations.  [Doc. 1, ¶¶ 38-41]  Plaintiffs bring the

---

[1] Plaintiffs variously allege that DentaQuest terminated Rainbow Dental or that it terminated "Plaintiffs."  [Doc. 1, ¶¶ 54, 63]  DentaQuest's letter states that it "has made a determination to terminate Rainbow Dental's continued participation."  [Doc. 1-3, p. 1]

following claims[2]:  I:  a 42 U.S.C. § 1983 claim for violation of their procedural due process rights (under both the federal Constitution and the New Mexico Constitution) in terminating Plaintiffs from the Medicaid provider network; II:  "Unlawful Delegation of Legislative Power in Violation of the New Mexico Constitution"; III:  "Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing"; and IV:  "Administrative Appeal Pursuant to NMSA 39-3-1.1."  [Doc. 1]

Defendant DentaQuest of New Mexico, LLC answered and filed a counterclaim, bringing claims against Rainbow Dental and Shaun Hwang for fraudulent misrepresentation, negligent misrepresentation, and violation of the New Mexico Unfair Practices Act, and seeking punitive damages.  [Doc. 16]  HSD did not answer, and instead filed the present *Motion to Dismiss*.[3]  [Doc. 22]  Among other grounds for dismissal, HSD argues that Plaintiffs failed to plead a plausible allegation of a necessary element of Plaintiffs' sole claim arising under federal law:  that Plaintiffs have a property interest giving rise to a due process claim.  [Doc. 23, p. 6-7]  The Court is persuaded by this argument, and thus does not address the remaining arguments for dismissal.

**ANALYSIS**

*Legal Standard Governing Motions to Dismiss for Failure to State a Claim*

---

[2] Within each claim, Plaintiffs only allege wrongful acts by Defendant DentaQuest. Plaintiffs nonetheless sue the State of New Mexico on the theory, to the best the Court can discern, that "DentaQuest was acting as a state actor and acting as a representative of and in the capacity of the New Mexico Human Services Department."  [Doc. 1, ¶ 27]

[3] Plaintiffs and DentaQuest have also filed various dispositive motions.  However, the Court addresses HSD's *Motion to Dismiss* first, given that it will have implications for this Court's exercise of supplemental jurisdiction over the remaining claims, which all arise under state law.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." HSD brings its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for the "failure to state a claim upon which relief can be granted." In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court adopted the following test for deciding Rule 12(b)(6) motions: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). In applying this test, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint, *Shrader v. A1 Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted); provided that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

### *Plaintiffs do not have a Protected Property Interest in Continued Medicaid Reimbursements*

In alleging a violation of Section 1983, Plaintiffs plead that DentaQuest was a state actor, that Defendants were acting under color of law, and deprived Plaintiffs of their "legitimate claim of entitlement to their continu[ed]" participation as a provider in

4

the Medicaid program without adequate pre- or post-deprivation due process. [Doc. 1, ¶¶ 50-59] HSD, however, argues that Plaintiffs cannot plead allegations which state a claim that Plaintiffs' have a protected property interest in continued status as a DentaQuest participating provider. [Doc. 23, p. 6]

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process[?]" *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011). Protected interests include property interests, which "are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Setliff v. Mem'l Hosp. of Sheridan Cnty.*, 850 F.2d 1384, 1395 (10th Cir. 1988) (internal quotation marks and citation omitted); *see also Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2nd Cir. 1989) ("Where the state provisions bestow a right that cannot properly be eliminated except for cause, that right constitutes property protected by procedural due process.")

5

Plaintiffs plead that "Plaintiffs' prior contracts with DentaQuest and provider status with DentaQuest, which entitled them to reimbursement for dental services provided to Medicaid recipients, represent constitutionally protected property interests, to which Plaintiffs have a legitimate claim of entitlement to their continuation, pursuant to NMSA 1978, § 27-11-3(C)." [Doc. 1, ¶ 53] Plaintiffs also plead that they

> have rights under NMAC 8.352.3.9 and 42 C.F.R. §455: not to have Medicaid payments terminated without a proper determination of "credible allegations of fraud;" for termination to be temporary; to be advised of the nature and availability of a provider administrative hearing; to have a provider administrative hearing which safeguards the provider's opportunity to present a case; to have prompt notice and implementation of the final provider administrative hearing decision; and to be advised that judicial review may be invoked to the extent such review is available under state law.

[Doc. 1, ¶ 61]

This Court first considers whether N.M.A.C. § 8.352.3.9 or 42 C.F.R. § 455 create a constitutionally protected property interest in Plaintiffs' continuing status as participating providers. The Court concludes that N.M.A.C. § 8.352.3.9, is inapplicable, as it applies to "MAD [Medicaid Assistance Division] fee-for-service (FFS) providers who disagree with its decision concerning his or her participation as a MAD provider." Plaintiffs were not MAD fee-for-service providers: Plaintiffs were MCO contracted providers. N.M.A.C. § 8.308.15 applies to Plaintiffs as MCO contracted providers, and it states that Plaintiffs, as contracted providers may file a grievance with the MCO about any "matter or aspect of the MCO or its operation." N.M.A.C. § 8.308.15.7.D. As to providers, this regulation also defines the applicable process as follows:

**8.308.15.10   GENERAL INFORMATION ON A CONTRACTED MCO PROVIDER GRIEVANCE:**

A.   Upon a provider's contracting with the MCO, the MCO shall provide, at no cost, a written description of its grievance procedure and process to the provider. The MCO will update each of its providers with any changes to these procedures and processes. The description shall include:

      (1) information on how the provider can file a MCO grievance and the resolution process;

      (2) time-frames for each step of the grievance process through its final resolution; and

      (3) a description of how the MCO provider's grievance is resolved.

B.   A contracted MCO provider shall have the right to file a grievance with his or her MCO to express dissatisfaction about any matter or aspect of the MCO's operation. The provider may file the grievance either orally or in writing in accordance with his or her MCO's procedures and processes.

This regulation, thus, allows the MCO to define the grievance procedure and process. Moreover, nothing therein creates an entitlement to continued provider status or an expectation by a provider of continued entitlement to provider status.

As to the federal regulation cited by Plaintiffs, Part 455 of the Public Health regulations "sets forth requirements for a state fraud detection and investigation program." 42 C.F.R. § 455.1.  Plaintiffs specifically point to 42 C.F.R. § 455.23, which, among other requirements, states that a state agency "must send notice of its suspension of program payments" when it concludes that there are credible allegations of fraud.  42 C.F.R. § 455.23(b)(1).  The notice "must include or address," among other things, "the general allegations as to the nature of the suspension action, but need not disclose any

specific information concerning an ongoing investigation." 42 C.F.R. § 455.23(b)(2). At least one Federal Court of Appeals has concluded that nothing in 42 C.F.R. § 455.23 creates a constitutionally protected property interest. *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996) (stating that a substantive interest exists where an "individual has a legitimate claim of entitlement" and that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause" (internal quotation marks and citation omitted)) *abrogated on other grounds by Johnson v. City of Detroit*, 446 F.3d 614, 628 (6th Cir. 2006). Nor does this Court find that 42 C.F.R. § 455.23 creates a protected property interest, as nothing in the regulation expressly or implicitly creates an entitlement to continued provider status or otherwise discusses or defines a property interest in continuing provider status.

The Court turns next to Section 27-11-3(C) to determine whether it creates a constitutionally protected property interest. Section 27-11-3(C) states:

> Subject to the provisions of Subsection D of this section, after affording a medicaid provider written notice of hearing not less than ten days before the hearing date and an opportunity to be heard, and upon making appropriate administrative findings, the secretary may take any or any combination of the following actions against the provider:
>
> . . .
>
> (3) suspend or revoke the contract between the provider and the department pursuant to the terms of that contract.

Alternatively, Defendants submit that Subsection D is applicable. [Doc. 36, p. 5] It states:

> If a contract between the department and a medicaid provider explicitly specifies a dispute resolution mechanism for use in resolving disputes over

>performance of that contract, the dispute resolution mechanism specified in the contract shall be used to resolve such disputes in lieu of the mechanism set forth in Subsection C of this section.

Section 27-11-3(D). Considering these sections as well as the remainder of Section 27-11-3, the Court first observes that nothing in the statute states that a Medicaid provider's contract can only be terminated for cause or under other specified circumstances. Nor does anything in Section 27-11-3 characterize a Medicaid provider's interest in continuing reimbursements as an entitlement. Like N.M.A.C. § 8.308.15, Section 27-11-3(D) leaves the particulars of the grievance or dispute resolution mechanism to be established and defined by the MCO. Indeed, Section 27-11-3 does not characterize the nature of a Medicaid provider's interest as anything more than its interest in its contract. Section 27-11-3(A) (stating that "[c]onsistent with the terms of any contract between the department and a Medicaid provider" the Secretary may access the provider's records "to ensure that the Medicaid provider is complying with the terms of its contract with the department"); Section 27-11-3(D) (allowing dispute resolution as specified within a contract in lieu of the process set forth in Section 27-11-3(C)). Thus, the Court concludes that the New Mexico legislature defined the interest of a Medicaid provider as its interest in its contract.[4]

Turning, then, to the only contractual document attached to the Complaint, the Court next reviews DentaQuest's "Office Reference Manual." [Doc. 1-1] HSD concedes

---

[4] Plaintiffs also make an "implied right of action" argument, submitting that N.M.S.A. 1978 § 27-11-1 et seq. "was specifically enacted for the special benefit of a particular class: Medicaid providers." [Doc. 30, p. 13] Plaintiffs point to no language in the Act which supports this argument, nor does the Court find any such language. The Court is not persuaded by this argument.

that "[v]alid contracts may constitute a property interest for purposes of due process." *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998); *see also Lowe v. Scott*, 959 F.2d 323, 338 (1st Cir. 1992) ("A public hospital, as a state employer, may create a property interest in [hospital practice] privileges through its own regulations guaranteeing that these privileges will not be revoked without cause or a hearing."). In the similar context of employment, the Supreme Court held that the terms of the employment contract define the nature and boundaries the property interest. *Roth*, 408 U.S. at 578 (stating that, for a university professor, "the respondent's 'property' interest in employment . . . was created and defined by the terms of his appointment").

Plaintiffs do not point the Court to any provision in the Office Reference Manual which establishes a property interest. Based on the Court's review, the most pertinent section is titled "Credentialing," and states, in relevant part:

> DentaQuest, in conjunction with the Plan,[5] has the sole right to determine which dentists (DDS or DMD); it shall accept and continue as Participating Providers. The purpose of the credentialing plan is to provide a general guide for the acceptance, discipline and termination of Participating Providers. . . .
>
> . . .
>
> Nothing in this Credentialing Plan limits DentaQuest's sole discretion to accept and discipline Participating Providers. No portion of this Credentialing Plan limits DentaQuest's right to permit restricted participation by a dental office or DentaQuest's ability to terminate a

---

[5] The "Plan" is defined as "an insurer [or] health maintenance organization." [Doc. 1-1, p. 48]

> Provider's participation in accordance with the Participating Provider's written agreement,[6] instead of this Credentialing Plan.
>
> . . .
>
> **Discipline of Providers (Policy 300.019)**
>
> **Procedures for Discipline and Termination (Policies 300.017-300.021)**
>
> . . .
>
> Note: The aforementioned policies are available upon request by contacting DentaQuest's Customer Service Department[.]

[Doc. 1-1, p. 26] The "Discipline of Providers" and "Procedures for Discipline and Termination" policies referenced in this provision are not set forth in the Manual or elsewhere in the record. The Manual also sets forth a "Dispute Resolution/Provider Appeals Procedure" process.[7] [Doc. 1-1, p. 14] This process, however, does not discuss any rights or entitlements, define the "dimensions" of any property interest, or otherwise give rise to a property right of constitutional significance. *See Roth*, 408 U.S. at 577.

Considering the language of the Office Reference Manual, nothing therein creates a reasonable expectation that a provider's status as a participating provider cannot be

---

[6] There is no written agreement in the record, nor do Plaintiffs plead any facts suggesting there is a separate written agreement or that it was the source of a contractually created property right.

[7] This process states, in full:
> Participating Providers that disagree with determinations made by the DentaQuest dental directors may submit a written Notice of Appeal to DentaQuest that specifies the nature and rationale of the disagreement. This notice *and* additional support information must be sent to DentaQuest within 60 days from the date of the original determination to be reconsidered by DentaQuest's Peer Review Committee.

[Doc. 1-1, p. 14]

terminated at any time or can only be terminated for cause. *See Roth*, 408 U.S. at 578 (concluding that a contract which "did not provide for . . . renewal absent 'sufficient cause'" did not support the claimed entitlement to reemployment). Instead, the language explicitly states the opposite, that DentaQuest and the Plan have the "sole discretion" and "sole right" to determine which dentists may continue as participating providers. Such language disavows a constitutional property interest. [Doc. 1-1, p. 26] "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756 (2005); *see also Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264-65 (10th Cir. 1981) (stating that a nursing home whose Medicaid contract was not renewed did not have a constitutionally protected property interest where it "understood that a new [contract] would not issue unless it could affirmatively show it was qualified").

As Plaintiffs have not pleaded any persuasive source of constitutionally protected property interest, the Court concludes that this case is not materially distinguishable from *Koerpel v. Heckler*, 797 F.2d 858, 864-865 (10th Cir. 1986). In *Koerpel*, the Court held that a doctor did not have a protected property interest in continued Medicare reimbursements based on 42 U.S.C. § 426-1, in which, the doctor alleged, Congress determined that "all individuals needing dialysis were eligible for Medicare reimbursement, thus creating reimbursement expectations on the part of both consumers and providers of health care." *Id.* at 863. The Court disagreed, determining that "[t]he statute discusses only the entitlement of patients to benefits. It does not mention any entitlement for practitioners like Dr. Koerpel who provide health services." *Id.* Thus,

because the doctor was "not the intended beneficiary" of the statute upon which he relied, nor was his license being revoked, his interests were "not of constitutional significance for the establishment of a protectable property interest," despite the fact that he was "likely to suffer financial losses." *Id.* at 864 (internal quotation marks and citation omitted). Instead, the doctor's expectations of reimbursement were a "unilateral hope" and not sufficient to amount to a protected property interest.[8] *Id.* at 863.

Plaintiffs argue that cases subsequent to *Koerpel* establish that "Medicaid/Medicare reimbursements can qualify as protected property interests." [Doc. 30, p. 8] The cases Plaintiffs cite do not address a providers interest in continued status as a provider, which is the property interest Plaintiffs allege, and thus the cases are distinguishable. *See Starko v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 39, 276 P.3d 252 (holding that N.M.S.A. 1978, § 27-2-16(B), which created a minimum guaranteed reimbursement rate for pharmacists, created a constitutional property interest), *rev'd sub nom. on other grounds Starko v. New Mexico Human Servs. Dep't*, 2014-NMSC-033, 333 P.3d 947; *Wilder v. Virginia Hosp. Assoc.*, 496 U.S. 498, 509-510 (1990) (holding that the Boren Amendment to the Medicaid Act "creates a right enforceable by health care providers under § 1983 to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically

---

[8] Plaintiffs also pleaded that they "have approximately ten claims pending through DentaQuest," but Plaintiffs failed to plead whether those pending claims were submitted before or after they were terminated. Plaintiffs have therefore failed to state a plausible claim for relief for these ten claims. Further, where the Plaintiffs claim that they have "deprived of payment that [they] contend[ they are] owed under a contract," such a property interest "can be fully protected by an ordinary breach-of-contract suit." *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001).

operated facility that provides care to Medicaid patients. The right is not merely a procedural one that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to reasonable and adequate rates as well."); *Painter v. Shalala*, 97 F.3d 1351, 1357-58 (10th Cir. 1996) (holding that a Medicare provider "does not have a property interest in receiving Part B payments in an amount different from that set forth in the Secretary's 1992 fee schedule" but stating that he "may have a recognizable property interest in receiving payment in accordance with the fee schedule established for 1992"); *Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 78 (1st Cir. 2002) ("Assuming, without deciding, that [a Medicare provider] has a legitimate property interest in receiving reimbursement payments").

As the Court noted above, however, there are two policies referenced in Office Reference Manual which were not attached to the Complaint: the "Discipline of Providers" and "Procedures for Discipline and Termination" policies. Construing Plaintiffs' allegations in the light most favorable to Plaintiffs, these policies may be among the documents requested by Plaintiffs but not provided by DentaQuest. [Doc. 1, ¶¶ 31-37] If DentaQuest refused to provide such documentation, the Court is not inclined to find that the failure of Plaintiffs to attach the policies to their Complaint warrants dismissal of their Complaint. Based on the Court's review of the docket as it pertains to discovery, there is reason to believe (though the Court cannot definitively conclude) that DentaQuest has now provided Plaintiffs with these policies, if they exist. [Doc. 34; Doc. 68] Thus, rather than dismissing this case at this juncture, therefore, the Court concludes

that it is in the interest of justice to allow Plaintiffs an opportunity to amend their complaint if these policies have language which is sufficient to establish a contractually created property interest. As unlikely of a scenario as it may be that the polices not in the record create a property right that the Office Reference Manual expressly disavows, the interests of justice weigh in favor of allowing Plaintiffs the opportunity to review the documents and determine whether it would be appropriate to amend their complaint. If Plaintiffs have requested these documents but have not received them in discovery, the Court advises the parties to request a status conference. If, within fourteen (14) days from the date of this Memorandum Opinion and Order, Plaintiffs have failed to move to amend their complaint or request a status conference, Plaintiffs' claim for a violation of 42 U.S.C. § 1983 will dismissed.[9]

### *If Plaintiffs' Section 1983 Action is Dismissed, Dismissal of all Claims and Counterclaims is Appropriate*

Though only HSD has moved to dismiss Plaintiffs' single federal claim brought under 42 U.S.C. § 1983, the dismissal of the claim on the grounds of the failure to plead a constitutionally protected property interest is necessarily a dismissal of the claim in its entirety—against both HSD and DentaQuest.

Should the Court dismiss the sole claim over which it has original jurisdiction, the Court must decide whether it should continue to exercise jurisdiction over Plaintiffs' claims arising under state law. "The district courts may decline to exercise supplemental

---

[9] Having concluded that Plaintiffs, thus far, fail to allege a protected property interest, the Court does not consider whether Plaintiffs pleaded facts which state a claim that the process they received was constitutionally inadequate.

jurisdiction over a claim . . . if[:] . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The exercise of pendant jurisdiction is a matter within the Court's discretion. *Thatcher Enters. v. Cache Cnty. Corp.,* 902 F.2d 1472, 1478 (10th Cir. 1990) (stating also that "[i]f the federal claim is dismissed before trial . . . the state law claim will generally be dismissed as well"). In deciding whether to exercise supplemental, or pendant, jurisdiction, the Court must consider the "values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). The rationale of the Court in *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) is also applicable to this case:

> There are of course the best of reasons for a district court's deferral to a state court rather than retaining and disposing of state law claims itself—such factors (taught by [*United Mine Workers v.*] *Gibbs*[, 383 U.S. 715, 726 (1966) and repeated in *Carnegie–Mellon* [*Univ. v. Cohill*, 484 U.S. 343, 350 (1988)]) as judicial economy, fairness, convenience and comity. As this Court has said in *Thatcher Enters. v. Cache County Corp*., 902 F.2d 1472, 1478 (10th Cir.1990):
>
>> Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.

Here, comity and federalism counsel against this Court exercising jurisdiction over Plaintiffs' state law claims. Plaintiffs' claims for violation of due process under the New Mexico Constitution, the unlawful delegation of legislative power in violation of the New Mexico Constitution, and their state law administrative appeal all raise questions peculiar to the State of New Mexico and its laws. The State of New Mexico also has a strong interest in reviewing Plaintiffs' breach of contract claim, as it is a contract uniquely tied to and governed by New Mexico statutes and regulations. Similarly, DentaQuest's

counterclaims raise unique questions under New Mexico law, including considering whether the New Mexico False Claims Act has abrogated DentaQuest's fraudulent and negligent misrepresentation claims and whether DentaQuest has a cause of action under the New Mexico Unfair Practices Act.  Rather than this Court making an *Erie* guess as to how the New Mexico Supreme Court would rule on any issue of first impression, in this case it is most appropriate to allow New Mexico courts to make new law on these issues. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  Accordingly, comity and federalism weigh strongly in favor of the review of these claims by New Mexico Courts.  Should the Court dismiss the only federal claim, judicial economy would not weigh against the Court declining to exercise jurisdiction over the state law claims because the parties will be able to litigate the entire case in a single forum.  Finally, the remaining factors of fairness and convenience do not weigh heavily in favor of either federal or state court jurisdiction.[10]

**CONCLUSION**

For the foregoing reasons, the Court **DEFERS** ruling on HSD's *Motion to Dismiss* pending the opportunity to Plaintiffs to file a Motion to Amend their Complaint, if

---

[10] Because the Court is allowing Plaintiffs an opportunity to move to amend their complaint given this Court's decision, the Court does not address the recently filed *Plaintiffs' Motion to Amend their Complaint* [Doc. 71]. In the pending *Motion to Amend*, Plaintiffs seek only to add additional facts pertinent to their breach of contract claim, and do not seek to allege any new facts which would establish that they have a constitutionally protected property interest in their continued status as a Medicaid provider.  Plaintiffs may include all such requested amendments in a single motion and the Court will address all such requested amendments at the same time. [Doc. 71]

appropriate. Plaintiffs are instructed to either file a motion to amend their complaint or request a status conference if they need additional discovery by on or before August 12, 2016.

**SO ORDERED** this 28th day of July, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Court Judge